IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| JOSEPH A. KEATON, | |
| Plaintiff, | CIVIL ACTION NO.: 5:18-cv-66 |
| v. | |
| LT. KYLA M. LEE; OFFICER STUART DELOACH; and OFFICER DERECK COBB, | |
| Defendants. | |

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss. Doc. 12. For the reasons set forth below, I **RECOMMEND** the Court **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

**BACKGROUND**[1]

On April 16, 2016, Plaintiff agreed to give Tamika Barnes a ride to the corner of Roosevelt and Seamen Streets in Waycross, Georgia. Doc. 1 at 8. During the ride, Tamika[2] asked Plaintiff for a cigarette and then stole his pain medication. Id. Plaintiff told Tamika to

---

[1] In considering this Motion, the Court will accept the allegations in Plaintiff's Complaint as true and construe them in the light most favorable to him. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).

[2] Tamika Barnes is referred to by her first name, Tamika, to avoid any confusion with her twin sister, Shemika Barnes, who also figures prominently in Plaintiff's factual allegations.

return his pain pills.  Id.  During a search for the pain pills, Tamika exited the vehicle and started shouting, "Help, Help, Someone call the police."  Id.  A neighbor called the police.  Id.

Tamika's brother, Lamar Johnson, came from inside a nearby house and asked why she and Plaintiff were arguing.  Id.  Plaintiff told Mr. Johnson that Tamika had stolen his pain pills.  Id.  Mr. Johnson told Tamika to give Plaintiff his pills back, but she refused.  Id.  Mr. Johnson then searched Tamika and found the pills in her book bag.  Id.  After getting his pills back, Plaintiff got in his vehicle and drove to Owen Street.  Id.

Soon after Plaintiff drove off from Tamika's location, Defendant DeLoach responded to a report of a fight between a man and a woman at the corner of Roosevelt Street and Seamen Street.[3]  Doc. 1-1 at 7.  According to his incident report, Defendant DeLoach saw a woman walking down the road and a gold Mercedes leaving.  Id.  The woman identified herself to DeLoach as Shemika (but Plaintiff claims the woman was actually Tamika).  Doc. 1-1 at 7; Doc. 1 at 8.  The woman told DeLoach that she had been with Plaintiff and that Plaintiff had stolen her wallet.  Doc. 1-1 at 7.  The woman also told DeLoach that her sister, Tamika, had accidentally switched wallets earlier (presumably, to explain why the wallet in Plaintiff's vehicle contained Tamika identification, rather than Shemika's).  According to DeLoach's incident report, the woman reported she and Plaintiff had been in Plaintiff's car together, on their way to Georgia Street (her destination), when Plaintiff pulled into the dead end of Roosevelt Street and said he was going to have sex with her.  Id.  The woman stated she had refused, got out of the car, and started walking down the street.  Id.  While she was walking away, Plaintiff jumped out of the car and began following her.  Id.  She said Plaintiff was accusing her of taking his wallet.  Id.

---

[3]  In assessing whether a complaint states a plausible claim, courts may consider documents attached to the complaint as part of the complaint.  Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215–16 (11th Cir. 2012).

The woman reported she showed Plaintiff the only wallet she had, which was her own. Id. She also told Defendant DeLoach that her brother (Mr. Johnson) happened to be staying at a nearby house and had come outside to investigate. Id.

Defendant DeLoach spoke with Mr. Johnson, who said he had witnessed the argument over the wallet. Id. Mr. Johnson said he went back inside and then heard the woman yelling for help, so he ran back outside where he saw Plaintiff on top of her, straddling her. Id. Mr. Johnson said Plaintiff had his hands around the woman's neck and was choking her. Id. Mr. Johnson told Defendant DeLoach that he told Plaintiff to get off of the woman. Id. Mr. Johnson told Defendant DeLoach that the woman then showed Plaintiff the only wallet she had (which contained Tamika's identification). Id. Mr. Johnson told DeLoach that Plaintiff snatched the wallet from the woman and went back to his car. Id. The woman told DeLoach she wanted to press charges. Id. Plaintiff alleges that the woman was, at all times, Tamika, and that she falsely represented herself as Shemika to Defendant DeLoach and made up the story about the switched wallets to hide her true identity.

Contemporaneous with Defendant DeLoach conducting his investigation, Defendant Cobb—at a different nearby location—stopped Plaintiff's vehicle and questioned Plaintiff about the incident with Tamika. Doc. 1 at 8. Plaintiff explained Tamika had tried to steal his prescribed medication. Id. Defendant Cobb told Plaintiff to turn off his vehicle and that he would be back. Id. Defendant Cobb then returned to the vehicle with Defendant Lee. Id. Defendant Cobb asked if he could search Plaintiff's vehicle, to which Plaintiff replied, "Yes." Id. During the search, Defendant Cobb found Tamika's wallet and alcohol. Id. Defendant Lee then gave Plaintiff a sobriety test, which Plaintiff passed. Id. Nevertheless, Defendant Lee and Defendant Cobb arrested Plaintiff. Id. During the arrest, Defendant Lee fastened the handcuffs

very tightly.  Id.  Plaintiff was not told the reasons for his arrest and was not allowed "to tell [his] side of the story."  Id.  Defendant Lee told Defendant DeLoach to detain Plaintiff.  Id.  Defendant DeLoach asked why Plaintiff was being arrested, and Defendant Lee responded, "[F]or all we can."  Id.

Plaintiff was transported to the Waycross Police Department.  Id.  He asked why he was being arrested, but the officer would not tell him.  Id.  Plaintiff was then transported to the Ware County Jail, where a deputy took his belt and the rest of his property, causing Plaintiff's pants to drop to around his ankles.  Id.  Plaintiff was taken to the medical unit—with his pants down—where a nurse told Defendant Lee to take Plaintiff to the Mayo Clinic, because his blood pressure was too high to be admitted to the jail.  Id.

When Plaintiff arrived at the Mayo Clinic, his pants were still around his ankles.  Id.  A nurse on duty at the clinic asked him what was wrong, and he told her his blood pressure was too high because the handcuffs were cutting off his circulation.  Id.  At this point, Defendant DeLoach pulled up Plaintiff's pants.  Id.  Plaintiff was later transported back to the Ware County Jail and was cited for "driving under the influence refusal, open container, robbery by sudden snatching, and aggravated assault."  Doc. 1-1 at 8.

Plaintiff was indicted in the Superior Court of Ware County on the four charges on July 12, 2016.  Doc. 3-3 at 1–3.  The charges were ultimately *nolle prossed* by the Ware County District Attorney's Office on December 7, 2016, based on prosecutorial discretion and after it was discovered the victim gave a false name to the police.  Doc. 1 at 10.  However, it appears Plaintiff remained in custody from the date of his arrest, April 16, 2016, through the date he filed his Complaint on August 28, 2018.  Doc. 1 at 3 (noting Plaintiff was then confined at Coastal State Prison).  While the precise facts are difficult to discern, it appears Plaintiff was charged

4

with violating his parole (also based on the April 16, 2016 incident, but separate and apart from the indictment), his parole was revoked, and he was sentenced to an unknown period of incarceration for the parole violation(s). Doc. 1 at 6. Indeed, Plaintiff remained in custody after filing his Complaint until approximately March 4, 2019, when Plaintiff informed the Court he was no longer incarcerated. Doc. 7.

Plaintiff filed his Complaint asserting various claims under 42 U.S.C. § 1983. Id. at 1. Plaintiff also filed a "Brief" in support of his Complaint. Doc. 3. The Court construes Plaintiff's Brief as a supplement to his Complaint and considers the documents together as the operative Complaint. Plaintiff attaches various exhibits to his Complaint. See Docs. 1-1, 3-1, 3-2, 3-3, and 3-4.

In his Complaint, Plaintiff tends to muddle factual allegations, legal claims, and legal conclusions, but the best construction of Plaintiff's Complaint is that his purported claims fall into three categories: (1) complaints about his arrest and treatment on April 16, 2016; (2) complaints about his state court criminal prosecution arising from the April 16, 2016 incident; and (3) complaints about his conviction, sentence, and incarceration arising from the April 16, 2016 incident.[4] Docs. 1, 3. As to the first category, Plaintiff asserts he was falsely arrested and subjected to "exposure" because his pants fell down below his waist during his transport on April 16, 2016. Doc. 1 at 5. Plaintiff also alleges Defendants conspired to arrest

---

[4] Plaintiff's Complaint is replete with out-of-context legal phrases, citations, and concepts. See, e.g., Doc. 1 at 7 ("Racketeering Influenced Corrupt Organization"); Id. ("Denying me liberty and pursue of happiness, criminal procedure 17-1-4 17-4-26"); Doc. 3 at 2 ("Plaintiff content that fraud, falsify court document misled him. Which suppose to be a true bill indictment."); Id. at 4 ("civil procedure rule 9 fraud"); Id. at 5 ("26.2 Preliminary hearing. The complete absence of state witness[.]"); Id. at 7 ("Judge: code of judicial conduct. Canon 1. Canon 2. Canon 3. Canon 4. Canon 5."); Id. ("Uniform Superior Court Rules are not being administer[.]"). While the Court construes Plaintiff's pro se Complaint liberally, as it must, the Court gives no consideration to these disconnected and irrelevant references.

5

him and generate a false report on April 16, 2016. Doc. 1 at 9. As to the second category, Plaintiff raises various procedural issues related to his prosecution, including a challenge to the indictment, that he was improperly prohibited from appearing at a preliminary hearing, bond hearing, and arraignment on June 28, 2016 and a sentencing hearing on December 8, 2016, and that he was not allowed to subpoena certain witnesses in the criminal case.[5] Doc. 1 at 5, 7. Plaintiff additionally claims his criminal defense attorney, the prosecutor, and ostensibly the state court conspired against him in the criminal prosecution. Doc. 3 at 2. Regarding the third category, Plaintiff simply contends he should not have been convicted and sentenced on any charges.

As relief, Plaintiff seeks release from prison and monetary damages.[6] Doc. 1 at 6. In terms of monetary damages, Plaintiff seeks compensation for "mental illness sustain being incarcerated," for "physical injury from an inmate at Montgomery State Prison," and for "being incarcerated two and half years." Id.

## DISCUSSION

Defendants argue Plaintiff's action should be dismissed for failure to state a claim upon which relief can be granted. Doc. 12 (citing Fed. R. Civ. P. 12(b)(6)). In support of their Motion, Defendants argue the majority of Plaintiff's claims are barred by the applicable statute of limitations. Doc. 12-1 at 7. Further, any claims not barred by the statute of limitations are not

---

[5] Plaintiff's language is somewhat unclear, but it appears Plaintiff was "left at the jail" for these various hearings. Doc. 1 at 9. There is some indication that Plaintiff's criminal defense attorney may have waived Defendant's appearance at the various hearings. Doc. 3. at 3 ("Plaintiff did not give attorney permission to waiver my appearance in the proceeding upon critical stage without plaintiff, knowledge and understanding.").

[6] In construing Plaintiff's Complaint liberally, the Court determines Plaintiff was seeking release at least at the time he filed his Complaint, at which point he was still incarcerated. Doc. 1 at 9 ("Plaintiff want this honorable court to mortify [sic] sentence because of my incarceration, prosecution scheme.").

actionable, as they challenge the fact and duration of Plaintiff's sentence and the validity of his parole revocation.  Id. at 8.  To the extent Plaintiff's claims might survive these hurdles, Defendants argue Plaintiff cannot sue Defendants in their official capacities, as he fails to allege a policy or custom that would render the City of Waycross liable.  Id. at 10.  Defendants argue they are entitled to qualified immunity for any claims asserted against them in their individual capacities.  Id. at 12.  Plaintiff filed a Response but fails to address the arguments made by Defendants.  Doc. 17.

**I.      Standard of Review**

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal punctuation and citation omitted).  While a court must accept all factual allegations in a complaint as true, this tenet "is

7

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

Plaintiff attached a Waycross Police Department incident report related to the above incident as an attachment to his Complaint. Doc. 1-1. Federal Rule of Civil Procedure 10(c) provides that a written instrument that is an exhibit becomes part of the pleading for all purposes. Fed. R. Civ. P. 10(c); Baker v. Sanford, 484 F. App'x 291, 292 (11th Cir. 2012). These documents may be considered by the court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment. Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 505 (7th Cir. 2013); Taylor v. Appleton, 30 F.3d 1365, 1367 n.3 (11th Cir. 1994). Additionally, by attaching an exhibit, the pleader may foreclose a theory of relief, as the document itself may reveal the existence of an insurmountable defense. El-Bey v. Village of South Holland, 513 F. App'x 603, 604–05 (7th Cir. 2013) (finding an attached police report that contradicted plaintiff's claims was properly considered in a Rule 12(b)(6) motion to dismiss); Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2011) (holding—in a suit against a court reporter for falsifying transcripts where plaintiff attached court transcripts—that "[b]ecause these attached exhibits contradict [plaintiff's] claims, the district court was entitled to rely on them in dismissing the allegations against the court reporter.").

## II. Plaintiff's Claims Against the Arresting Officers Related to his Arrest and Treatment on April 16, 2016

Plaintiff asserts claims against the named Defendants (i.e., the officers who arrested him on April 16, 2016) for false arrest, exposure, and conspiracy under 42 U.S.C. § 1983, all related to his arrest and treatment during the events of April 16, 2016. Docs. 1, 3. Defendants seek to dismiss these claims because, among other reasons, all such causes of action would have accrued on April 16, 2016, and the two-year statute of limitations would have run on April 16, 2018, but

Plaintiff did not file this action until August 28, 2018—more than four months later.  Doc. 12-1 at 7–8.  Plaintiff filed a Response but fails to address the statute-of-limitations issue.  Doc. 17.  Having fully considered the issue, the Court agrees with Defendants that Plaintiff's claims against them related to April 16, 2016 incident are time barred.[7]

Despite creating a federal cause of action, § 1983 looks to state law for the length of the applicable statute of limitations.  Wallace v. Kato, 549 U.S. 384, 387 (2007).  For actions brought under § 1983, federal courts apply the forum state's statute of limitations for personal injury actions.  Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003).  In Georgia, the forum state for this cause of action, the statute of limitations for personal injury actions is two years.  O.C.G.A. § 9-3-33; Porter v. Ray, 461 F.3d 1315, 1323 (11th Cir. 2006).  Generally, the statute of limitations for these claims "begins to run from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"  Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting Rozar v. Mullis, 85 F.3d 556, 561–62 (11th Cir. 1996)).  Therefore, "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."  Wallace v. Kato, 549 U.S. 384, 393 (2007).

In this case, Plaintiff's claims against these Defendants related to the events of April 16, 2016—to the extent there are any cognizable claims—accrued on that date and were subject to a

---

[7] Defendants raise a number of other arguments in favor of dismissal of these claims, including that Plaintiff has failed to state a claim upon which relief may be granted.  Doc. 12-1.  Indeed, the Court doubts seriously that many of Plaintiff's claims—for example, the claim for exposure—assert any cognizable theory under 42 U.S.C. § 1983.  But because the claims are plainly be time barred, the Court need not address Defendants' other arguments.

two-year statute of limitations. Plaintiff failed to file suit within that period. Accordingly, I **RECOMMEND** the Court **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's § 1983 claims against these Defendants for false arrest, exposure, and conspiracy.

### III.     Plaintiff's Claims Concerning his State Court Criminal Prosecution

Plaintiff attempts to allege § 1983 claims related to his state court prosecution. Docs. 1, 3. Plaintiff challenges various procedural aspects of that case, including a challenge to the indictment, that he was improperly prohibited from appearing at a preliminary hearing, bond hearing, and arraignment on June 28, 2016 and a sentencing hearing on December 8, 2016, and that he was not allowed to subpoena certain witnesses in the criminal case. Doc. 1 at 5, 7. Plaintiff additionally claims his criminal defense attorney, the prosecutor, and ostensibly the state court conspired against him in the criminal prosecution. Doc. 3 at 2.

The Court need not undertake a lengthy discussion of the merits of these claims or the various grounds for dismissal, because Plaintiff fails to allege any of the Defendants named in this action were in any way responsible for these alleged constitutional violations. Liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984). All of the alleged deprivations and violations related to Plaintiff's criminal prosecution arise exclusively from actions by Plaintiff's defense attorney, the prosecutor, and, to some degree, the presiding court. Plaintiff has not alleged any facts showing the Defendants named in this case (the law enforcement officers who arrested Plaintiff) caused any alleged deprivations during Plaintiff's prosecution, nor has he identified any such actions in his Response to Defendants' Motion to Dismiss. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion as to these claims and **DISMISS** all of Plaintiff's claims against

10

the named Defendants related to Plaintiff's state court criminal due process claims against Defendants in their individual capacities.

**IV.     Plaintiff's Claims Concerning his Conviction, Sentence, and Incarceration**

Plaintiff also asserts claims related to his conviction, sentence, and incarceration. Docs. 1, 3. The precise circumstances of Plaintiff's conviction, sentence, and incarceration are unclear, as are Plaintiff's challenges, but it is clear that he cannot pursue the claims here—namely, because of the type of relief he seeks. On these claims, Plaintiff seeks two forms of relief: (1) release; and (2) compensation. Doc. 1 at 6. Based on the undisputed facts, Plaintiff cannot pursue either in this case.

Plaintiff's claim for release or modification of sentence plainly fails. Plaintiff filed a § 1983 suit, but an application for a writ of habeas corpus is the exclusive remedy by which an individual can seek release from confinement.[8] Cooks v. Sec'y, Fla. Dep't of Corr., 599 F. App'x 940, 941 (11th Cir. 2015).

Plaintiff's claims seeking compensation based on his conviction, sentence, and incarceration also fail. A state prisoner cannot bring a § 1983 damages action directly challenging his confinement until and unless the reason for his continued confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or otherwise called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486–87 (1994). Defendants seek dismissal under Heck and note there is no indication Plaintiff's conviction and sentence have been reversed on direct appeal,

---

[8]     Additionally, even if Plaintiff could seek release in this action, such a claim may be moot because Plaintiff has been released, and there is no indication that he is suffering collateral consequences or is likely to be placed back in custody. Doc. 7; Maleng v. Cook, 490 U.S. 488, 490 (1989); Weinstein v. Bradford, 423 U.S. 147, 148 (1975) (habeas petition challenging parole procedures rendered moot by petitioner's "complete release from supervision").

expunged, declared invalid, or otherwise called into question by a federal writ of habeas corpus. Doc. 12-1 at 9–10.  Plaintiff filed a Response but wholly failed to address the Heck-bar issue.[9] Plaintiff's monetary damages claims are plainly barred under Heck.

Because Plaintiff's claims for release and monetary damages related to his conviction, sentence, and incarceration fail as a matter of law, I **RECOMMEND** the Court **GRANT** Defendants' Motion as to these claims and **DISMISS** these claims.[10]

## V.    Leave to Appeal in Forma Pauperis

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[11]  Though Plaintiff has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are

---

[9]     Although the state court charges for which Plaintiff was indicted were *nolle prossed*, it is clear that Plaintiff was not incarcerated on those charges.  Plaintiff's parole was revoked, and as a result, he remained in custody long after the indicted charges were *nolle prossed*.  Thus, Plaintiff cannot point to the disposition of the indictment charges as a favorable disposition for the purposes of avoiding Heck.

[10]    As all claims have been addressed, the Court deems it unnecessary to discuss Defendants' remaining grounds advanced in their Motion to Dismiss.  Doc. 12-1 at 7–10, 12.  However, the Court notes that any claims Plaintiff asserts in this action regarding his conviction, sentence, incarceration would likely fail for the additional reason that Plaintiff only named the arresting officers as Defendants.

[11]    A certificate of appealability is not required in this § 1983 action.

indisputably meritless. Neitzke, 490 U.S. at 327; Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Preslicka, 314 F.3d at 531 ;see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **GRANT** Defendants' Motion and **DISMISS** Plaintiff's Complaint. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not

meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 9th day of March, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA